IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IPA TECHNOLOGIES INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 17-055 (RGA) |
| ) | |
| SONY CORPORATION, SONY ) | |
| ELECTRONICS INC., SONY CORPORATION ) | |
| OF AMERICA, SONY MOBILE ) | |
| COMMUNICATIONS AB, SONY MOBILE ) | |
| COMMUNICATIONS (USA) INC., and SONY ) | |
| MOBILE COMMUNICATIONS, INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS,
AND JOINDER IN SUPPORT OF AMAZON.COM, INC. AND
AMAZON DIGITAL SERVICES, LLC'S MOTION TO DISMISS,
PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

*Attorneys for Defendants Sony Electronics, Inc. and Sony Mobile Communications (USA) Inc.*

OF COUNSEL:

Michael C. Hendershot
Bruce S. Yen
David T. Okano
Alex H. Lee
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, CA 94304
(650) 320-1800

April 14, 2017

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.     NATURE AND STAGE OF PROCEEDINGS .................................................................1

II.    INTRODUCTION AND SUMMARY OF ARGUMENT .................................................1

III.   ADDITIONAL REASONS TO GRANT AMAZON'S PENDING MOTION ..................2

      A.   IPA's patent claims are directed to an abstract idea and recite fundamental, result-oriented steps without any particular technological detail .......................... 2

      B.   IPA's patent claims recite elements the specification acknowledges are generic and conventional ...................................................................................... 4

            1.   Representative claim 1 of the '718 patent recites components the specification admits are generic and used in conventional manner ........... 5

            2.   Representative claim 1 of the '061 patent adds what the specification, and a prior art publication it incorporates, admits was conventional ................................................................................... 7

            3.   Representative claim 1 of the '021 patent adds routine and conventional steps to the abstract idea recited by the '718 patent ........... 10

      C.   The ordered combination of the claimed components does not provide an inventive concept ............................................................................................... 12

IV.   CONCLUSION.................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016) ............................................................................................ 7, 10

*Alice Corp. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ......................................................................................................... 4, 13

*Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*,
   136 F. Supp. 3d 1228 (D. Haw. Sept. 29, 2015), *aff'd*, No. 2016-1082, -1083,
   2016 WL 5361570 (Fed. Cir. Sept. 26, 2016) ............................................................................ 5

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ............................................................................................. 4, 6

*Cook Biotech Inc. v. Acell, Inc.*,
   460 F.3d 1365 (Fed. Cir. 2006) ................................................................................................. 9

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ...................................................................................... 4, 7, 14

*IPA Techs. Inc. v. Amazon.com Inc.*,
   C.A. No. 16-1266 (D. Del.) ....................................................................................................... 1

*Purdue Pharma, L.P. v. Mylan Pharms. Inc.*,
   C.A. No. 15-1155, 2017 WL 784989 (D. Del. Mar. 1, 2017) .................................................... 9

*Tech. Dev. &, Licensing, LLC v. Gen. Instrument Corp.*,
   No. 07 C 4512, 2016 WL 7104253 (N.D. Ill. Dec. 6, 2016) ................................................. 5, 6

*In re TLI Commc'ns Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ................................................................................................... 4

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ................................................................................................. 12

**Statutes**

35 U.S.C. § 101 ........................................................................................................................ 1, 14

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1, 14

I.      **NATURE AND STAGE OF PROCEEDINGS**

Plaintiff IPA Technologies Inc. (IPA) filed a complaint for patent infringement against Defendants Sony Electronics Inc. and Sony Mobile Communications (USA) Inc. (Sony). IPA asserts infringement of certain claims of U.S. Patent Nos. 6,523,061 (the '061 patent), 6,742,021 (the '021 patent), and 6,757,718 (the '718 patent) (the asserted patents) by various Sony mobile telephone, tablet, smart watch, and television products that incorporate Google voice search capabilities. The present action is one of more than a dozen in which IPA has filed complaints for infringement of the '061, '021, and '718 patents against various manufacturers of mobile phones, tablets, smart watches, and TV products with voice search capabilities.

In one of those actions, *IPA Techs. Inc. v. Amazon.com Inc.*, C.A. No. 16-1266 (D. Del.), Defendants Amazon.com, Inc. and Amazon Digital Services, LLC (Amazon) filed a motion to dismiss under Rule 12(b)(6). *See* C.A. No. 16-1266, D.I. 12-13. As explained in Amazon's motion and for the reasons set forth below, the asserted patents are invalid as patent-ineligible under 35 U.S.C. § 101, and Sony moves to dismiss IPA's complaint with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

II.     **INTRODUCTION AND SUMMARY OF ARGUMENT**

1.      Sony agrees with and joins Amazon's motion, and does not wish to burden the Court with duplicative briefing. Sony submits this brief to bring a few additional points to the Court's attention for its consideration. In addition to addressing the abstract idea to which IPA's patent claims are directed, these additional points include:

- Charts mapping key admissions in the patents' shared specification to the limitations of the representative patent claims acknowledging that those limitations— individually and as an ordered combination—were generic and conventional in the art; and

- Bringing to the Court's attention a prior art publication expressly incorporated by reference into the patents' shared specification that describes a known and existing

spoken language interface to an electronic data source utilizing the same software components described in the shared specification. This publication reinforces the specification's admissions that the claims implement their underlying abstract idea with well-known technology used in a conventional way.

2. These additional points supplement Amazon's motion and further illustrate that the claims are directed to the abstract idea of responding to a spoken request for desired information in the context of generic computing technology that the patents acknowledge was well-known and conventional. The patents claim desired results in functional terms, not a particular technological solution as to how they may be achieved. This is not a close case. The admissions in the specification are clear and the Federal Circuit has repeatedly held such functional claims to be patent-ineligible. The Court should do so here.

## III. ADDITIONAL REASONS TO GRANT AMAZON'S PENDING MOTION

### A. IPA's patent claims are directed to an abstract idea and recite fundamental, result-oriented steps without any particular technological detail

As discussed in Amazon's motion, the claims of the asserted patents are directed to the idea of responding to a spoken request for desired information. The claims recite steps that are fundamental to this idea in any context (*e.g.*, receiving a request, interpreting it, selecting and returning the desired information). That the patents claim such basic steps in the context of generic computing components, such as "electronic data source(s)," "network servers," and "mobile information appliance(s)," does not transform the claims into a specific improvement to computer functionality or one necessarily rooted in computer technology.

The claims do not provide any particular way of receiving, processing, or interpreting spoken inputs or any technological solution to problems that may be encountered in doing so. Rather, they recite basic steps in terms of desired results without specifying how to achieve them, technologically or otherwise. For example, the claims discuss "receiving a spoken request," "rendering an interpretation" and "constructing a navigation query based upon the

interpretation." *See, e.g.*, '718 patent, claim 1. But the claims do not address how a spoken request is to be received or interpreted—just that these steps occur—or what form a navigation query may take or how it is to be constructed—just that it is.

Thus, the claims provide no more than the idea of responding to a spoken request for desired information in the context of electronically stored information. They recite functional, result-oriented steps without providing any particular technological solution. Indeed, the claimed method steps are so basic to the idea of responding to spoken requests in any context — as opposed to a particular technological implementation for doing so—that they closely map to examples of long-standing human activity. For example, the method steps of claim 1 of the '718 patent map to a search of a law firm's records in response to a spoken request, as follows:

| Claim limitation | Example of the Abstract idea |
|---|---|
| 1. A **method for speech-based navigation of an electronic data source** located at one or more network servers located remotely from a user, wherein a data link is established between a mobile information appliance of the user and the one or more network servers, comprising the steps of: | The claimed method steps have long been practiced in responding to spoken requests. One such example is a search of a law firm's records by a paralegal in response to a spoken request from an attorney. |
| (a) **receiving a spoken request for desired information** from the user utilizing the mobile information appliance of the user, wherein said mobile information appliance comprises a portable remote control device or a set-top box for a television; | A paralegal is called by an attorney asking for a summary judgment motion previously filed for a client (*i.e.*, receives a spoken request for desired information). |
| (b) **rendering an interpretation of the spoken request**; | The paralegal determines the request refers to case C.A. 02-1234 and identifies the motion's docket item number (*i.e.*, interprets the spoken request). |
| (c) **constructing a navigation query based upon the interpretation**; | The paralegal prepares a records request with the firm's client-matter number identifying the case and specifying the appropriate docket number (*i.e.*, constructs a query to navigate the firm's files based on the interpretation of the request). |
| (d) **utilizing the navigation query to select a portion of the electronic data source**; and | The individual responsible for the case's file selects the specified docket item from the case's pleadings file (*i.e.*, utilizes the query to select the relevant portion of the firm's files). |

| Claim limitation | Example of the Abstract idea |
|---|---|
| (e) **transmitting the selected portion of the electronic data source** from the network server to the mobile information appliance of the user. | A copy of the motion is sent to the requesting attorney (*i.e.*, transmits the selected portion of the firm's file to the requesting attorney). |

That the claimed method maps so directly to a brick and mortar example of the abstract idea highlights that it is directed to that idea, ***not*** a technological application of it.

Furthermore, that generic computing components are appended to the claims' abstract idea does not render them non-abstract. At best, this limits the idea to a technological environment, which is insufficient under *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014). The Federal Circuit has explained that claims, such as IPA's, that recite "generalized steps to be performed on a computer using conventional computer activity" are directed to an abstract idea and not "to an improvement in the functioning of a computer." *In re TLI Commc'ns Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (internal quotation omitted). Indeed, "merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016).

**B.    IPA's patent claims recite elements the specification acknowledges are generic and conventional**

As noted above and in Amazon's motion, IPA's claims are directed to the abstract idea of responding to a spoken request by selecting and retrieving desired information. The claims' recitation of functional method steps with generic computing technology does not provide an inventive concept sufficient to transform the claims into "significantly more" than the idea itself. *See Alice*, 134 S. Ct. at 2355. Here, the patents' shared specification leaves no doubt that the claims merely recite performance of the claimed abstract idea on generic and conventional

components, which "does not move [a claim] into section 101 eligibility territory." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014) (citing *Alice*, 134 S. Ct. at 2357).

As detailed in the mappings provided below, IPA's patents' shared specification contains express admissions that each limitation of the claims utilizes nothing more than known and well-understood components, used in their routine and conventional way. These admissions are reinforced by the disclosure in a prior art article incorporated into the shared specification.

1. **Representative claim 1 of the '718 patent recites components the specification admits are generic and used in conventional manner**

As demonstrated in Amazon's motion, claim 1 of the '718 patent is representative. The chart below details the shared specification's admissions that the generic computing elements recited in claim 1 are conventional technology used in conventional ways:

| Claim limitation | Admission in specification that limitation is generic/conventional |
|---|---|
| 1. A method for speech-based navigation of an electronic data source located at one or more **network servers located remotely from a user**, wherein a data link is established between a mobile information appliance of the user and the one or more network servers, comprising the steps of: | The shared specification explains that the claims operate over traditional networks, such as the Internet. *See, e.g.*, '718 patent at 4:48–59 ("Network 106 is a two-way electronic communications network and may be embodied in electronic communication infrastructure including coaxial (cable television) lines, DSL, fiber-optic cable, traditional copper wire (twisted pair), or any other type of hardwired connection. Network 106 may also include a wireless connection such as a satellite-based connection, cellular connection, or other type of wireless connection. Network 106 may be part of the Internet and may support TCP/IP communications, or may be embodied in a proprietary network, or in any other electronic communications network infrastructure."). |
| (a) receiving a spoken request for desired information from the user utilizing the mobile information appliance of the user, wherein said mobile information appliance comprises a **portable remote control device or a set-top box for a television**; | The shared specification does not provide any particular details on implementing the claimed method with a "remote control" or "set-top box" or identify any problems or solutions this may involve. *See id.* at 3:62–4:3, 5:64–6:7. Instead, the specification asserts the "mobile information appliance" can be implemented on "any number of different hardware and software computing platforms," including "general-purpose hardware microprocessor[s]" and known network TV platforms like "Microsoft's WebTV or the Diva Systems video-on-demand system." *Id.* at 6:65–7:10.<br><br>A number of courts have found remote controls, set-top boxes, and |

| Claim limitation | Admission in specification that limitation is generic/conventional |
|---|---|
|  | other components of television systems to be generic and conventional. *See, e.g.*, *Tech. Dev. & Licensing, LLC v. Gen. Instrument Corp.*, No. 07 C 4512, 2016 WL 7104253, at *6 (N.D. Ill. Dec. 6, 2016); *Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*, 136 F. Supp. 3d 1228, 1242–43 (D. Haw. Sept. 29, 2015), *aff'd*, No. 2016-1082, -1083, 2016 WL 5361570 (Fed. Cir. Sept. 26, 2016). |
| (b) **rendering an interpretation** of the spoken request; | The shared specification explains that "*[a] variety of commercial quality speech recognition engines are readily available on the market, as practitioners will know*." '718 patent, 7:29–32 (emphasis added). These include "Nuance 6" and "Nuance Express" from Nuance Communications, and "ViaVoice" from IBM, which is a "low-cost shrink-wrapped" program that is "available through popular consumer distribution channels." *Id.* at 7:32–39. |
| (c) **constructing a navigation query** based upon the interpretation; | The specification notes that those "of ordinary skill in the art will be *thoroughly familiar with the notion of database navigation through structured query*." *Id.* at 9:19–21 (emphasis added). The shared specification also explains that a "natural language interpreter" (or parser) such as the prior art "Gemini Natural Language Understanding System" can be used to provide "the meaning of the spoken words (semantic processing) as well as the grammar of the statement (syntactic processing)." *Id.* at 7:64–8:5. |
| (d) utilizing the navigation query to **select a portion of the electronic data source**; and | The shared specification explains that the "navigation query can be embodied using a formal database query language such as Standard Query Language (SQL)" and implemented using a "Relational Database Management System (RDBMS), such as Microsoft's Access, Oracle's Oracle7, and Computer Associates' CA-OpenIngres" that are "*well known to practitioners*." *Id.* at 9:6–17 (emphasis added). As noted above, the specification also emphasizes that "[p]ractitioners of ordinary skill in the art will be thoroughly familiar with the notion of database navigation through structured query." *Id.* at 9:19–21. |
| (e) **transmitting** the selected portion of the electronic data source from the network server to the mobile information appliance of the user. | As described in the preamble, the use of networks to communicate information between mobile devices and remote servers was known. *See, e.g.*, *id.* at 4:48–59; *see also buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends [] information over a network—with no further specification—is not even arguably inventive."). The specification explains that conventional technologies such as "CGI-scripted interactive form[s]," which are used "[i]n many existing Internet (and Intranet) applications", can be used to perform this limitation by, for example, "produc[ing] output for viewing by the user's web browser." *See* '718 patent at 9:36–10:5. |

The recitation of a "remote control" or "set top box" does not render the '718 patent claims non-abstract. Such elements are not integral to the performance of the claimed method;

indeed, the specification notes that they can be readily replaced with a conventional "cellular telephone or wireless personal digital assistant (wireless PDA)." *Id.* at 6:4-6. As noted in the chart above, courts have held a "remote control" or "set top box" to be conventional technology and the elements, at best, limit the abstract idea to a technological environment.

In short, the shared specification makes clear that nothing is recited by the claims other than "off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *See Elec. Power Grp.*, 830 F.3d at 1355. The claim does not recite a particular solution or an improvement to the underlying technology, but rather uses broad and sweeping functional language (*i.e.*, "rendering an interpretation of [a] spoken request" and "constructing navigation query based upon the interpretation") that encompasses desired results instead of any particular inventive ways of achieving those results. Indeed, the specification lays claim to "***all such alterations, permutations, and equivalents***" of the generic and conventional components and all of the "many alternative ways of implementing" those components to achieve the claimed result. '718 patent at 15:17–23 (emphasis added). Such "result-focused, functional claims" limited only by "purely conventional features" are not patent-eligible. *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1265 (Fed. Cir. 2016) (internal quotations omitted).

### 2. Representative claim 1 of the '061 patent adds what the specification, and a prior art publication it incorporates, admits was conventional

Claim 1 of the '061 patent largely mirrors claim 1 of the '718 patent, adding only that the claimed abstract idea is performed using generic software components: "agents" and a "facilitator" that "manages data flow." '061 patent, 15:36-38. As detailed below, the specification makes clear that these elements were conventional technology and part of a

platform known in the art for use in processing spoken input—a purpose further described in a prior art publication incorporated into the patents' shared specification.

The patents refer to an "agent" as a generic software "application program performing . . . services." *Id.* at 13:24–27. A "facilitator" is generic software to "manage[] . . . multiple agents and maintain[] a registration of each . . . agents' capabilities." *Id.* at 15:36–38, 13:41–51. The shared specification describes these software abstractions in terms of their desired functions, and not in terms of a particular way of accomplishing those functions. For example, in a "representative application," the specification explains that the facilitator takes a user's spoken request and "ask[s]" a "natural language [NL] agent" and "speech recognition agent" to "interpret the [spoken] query and return the interpretation" of that spoken input. *Id.* at 14:29–36. The specification provides no detail on how the facilitator achieves these goals.

Rather, the shared specification merely describes the "agent" and "facilitator" as names assigned to well-understood concepts used by an "Open Agent Architecture (OAA)," a "software platform for building systems that integrate spoken natural language as well as other user input modalities." *See id.* at 13:52–54. Further, the specification admits that this software platform was well-understood, providing several examples of its use in previously developed applications. *See id.* at 13:52–14:4 ("'unified messaging' application," "InfoWiz interactive information kiosk," and "'CommandTalk' application"). The specification and claims describe use of the "agent" and "facilitator" according to their established function in the OAA software platform.

Such express admissions in the shared specification alone establish that the claimed "agent" and "facilitator" are well-understood and generic software used in a conventional way. However, the specification also incorporates a prior art publication from October 23, 1997 (more than a year before the patents' earliest possible priority date) describing an application of OAA

that reinforces the lack of an inventive concept. In particular, the specification expressly incorporates and includes a web URL (www.ai.sri.com/~lesaf/commandtalk.html) for a publication describing an application of OAA named "CommandTalk" (Robert Moore et al., *CommandTalk: A Spoken-Language Interface for Battlefield Simulations*, Proceedings of the Fifth Conference on Applied Natural Language Processing, Association for Computational Linguistics, Oct. 23, 1997), which includes a "facilitator" that manages data of multiple "agents" and maintains a registry of each agent's capabilities. *Id.* at 13:65–14:24 (incorporated publication is attached as Exhibit A).[1]

As detailed below, both the shared specification and the incorporated publication demonstrate that the recited facilitator and agent were known and conventional in the art:

| Claim limitation | Admission in specification that limitation is generic/conventional |
|---|---|
| (e) invoking a user interface agent for outputting the selected portion of the electronic data source to the user, **wherein a facilitator manages data flow among multiple agents and maintains a registration of each of said agents' capabilities**. | The shared specification explains that the existing "OAA provides a useful software platform for building systems that integrate spoken natural language as well as other user input modalities." *See* '061 patent, 13:52–54. The specification explains that the prior art "CommandTalk" application was an example of an application using this known OAA software platform. *See id.* at 14:5–11.<br><br>As the publication incorporated by the shared specification similarly explains, the CommandTalk application, developed in 1995, "is a spoken language interface" to the "ModSAF battlefield simulation" that allows commanders to "interact with simulated forces by voice in a manner as similar as possible to the way . . . they would command actual forces." Ex. 1 at 1, 8–9. The CommandTalk |

---

[1] The express admissions in the shared specification alone demonstrate that the claimed "agent" and "facilitator" were known and conventional and support granting the present motion. However, the incorporation of the CommandTalk publication by the specification makes it part of the patents-in-suit and appropriate for consideration as well. *See, e.g.*, *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1376 (Fed. Cir. 2006) (incorporation by reference "makes clear that the material is effectively part of the host document as if it were explicitly contained therein."); *Purdue Pharma, L.P. v. Mylan Pharms. Inc.*, C.A. No. 15-1155 (RGA-SRF), 2017 WL 784989, at *4 (D. Del. Mar. 1, 2017) (finding the court could "consider 'matters incorporated by reference integral to the claim, items subject to judicial notice, matters of public record'" in deciding a Rule 12(b)(6) motion (internal citation omitted)).

| Claim limitation | Admission in specification that limitation is generic/conventional |
|---|---|
| | application includes various "components [that] are integrated through the use of SRI's Open Agent Architecture (OAA) (Cohen et al., 1994) . . . [which] makes *use of a facilitator* agent that plans and coordinates interactions among agents during distributed computation." *Id.* at 3. ***The agents "register with the facilitator" in order to provide the facilitator with their capabilities, and in particular, "the types of messages they can respond to."*** *Id.* This allows the facilitator to "dispatch[] . . . message[s] to the agents that have registered their ability to handle messages of that type." *Id.* |

The shared specification emphasizes the claims use this well-understood software architecture in a routine and conventional manner. For example, the specification explains that a standard, existing, non-improved version of this software platform "can provide an advantageous platform for constructing embodiments of the present invention." '061 patent at 14:25–27. The specification does not describe improvements to the software platform itself, but rather asserts that "advantage[s] . . . will be apparent to practitioners" of using the conventional, well-understood, and "*existing* platform." *Id.* at 15:1–6 (emphasis added).

In short, representative claim 1 of the '061 patent adds nothing to the abstract idea recited in claim 1 of the '718 patent that was not routine or conventional in the art. The shared specification admits the claimed "agents" and "facilitator" are merely generic labels that, at best, refer to well-understood and conventional software. Thus, the claims of the '061 patent recite nothing sufficient to confer eligibility to the claimed abstract idea. *See Affinity Labs*, 838 F.3d at 1264 ("routine, and conventional functions" do not add an inventive concept).

### 3. Representative claim 1 of the '021 patent adds routine and conventional steps to the abstract idea recited by the '718 patent

Claim 1 of the '021 patent is similarly abstract, adding a basic and ubiquitous step in spoken interactions: the addition of non-spoken input to spoken communications. What the

'021 patent claims refer to as "a non-spoken modality" is a fundamental form of interaction commonly used to clarify spoken communications.

For example, a customer requesting three tickets at a busy ticket booth provides input in a "non-spoken modality" by holding up three fingers if not heard by the vendor. The same is true when a person orders pepperoni, as opposed to cheese or sausage pizza at a mall food court, and then points to the particular slice they want (or similarly points to a particular cut of meat in a deli display case). Writing down an address or using hand gestures indicating left or right turns, in addition to giving spoken directions, is likewise "interaction in a non-spoken modality." Bank tellers have also long verified customers' identities by asking their name or account number and then requesting entry of a PIN. Multi-modal interaction by humans with computers is just as commonplace. Combinations of mouse clicks and typed keyboard entry are among the most established forms of computer interaction, such as typing in a search term and then using a mouse to click on a specific result.

Although such interactions may not be thought of in terms of "modality," as they are so established as to often be second-nature, the '021 patent claims add the general concept of just this sort of input. *See* '021 patent, 15:23–26 ("soliciting additional input from the user, including user interaction in a non-spoken modality different than the original request without requiring the user to request said non-spoken modality"). But, as with the other limitations, neither the claims nor the specification provide any particular technological solution for doing so.[2]

---

[2] As with the '718 patent, the method steps added in claim 1 of the '021 patent also map to myriad long-established examples of responding to a spoken request, including the law firm example in footnote 1 *supra*: (a) the paralegal interprets the attorney's request and identifies the relevant case and begins to construct a records request (*i.e.*, constructing at least a partial navigation query); (b) the paralegal sees that multiple summary judgment motions were filed and asks the attorney to circle the desired items on a copy of the docket (*i.e.*, soliciting additional

Claim 1 of the '021 patent is silent as to how such "non-spoken" input is solicited, received, interpreted, or used to refine a query, again, simply claiming such desired results in functional terms. Consistent with this, the shared specification confirms the recited multi-modal communication is generic, result-focused activity—not a particular technical implementation of the concept. As one example, the specification describes the following scenario: "[A] user might orally request 'what's the weather?' whereas the national online data source . . . might require specifying a particular city." *Id.* at 10:48–51. As another example, the specification describes a user speaking a request of "I want to see that movie starring and directed by Clint Eastwood." *Id.* at 11:39–40. The system returns a "list of film titles that satisfy the user's stated constraints" and the user can operate "a relatively convenient input modality, such as buttons on [a] remote control, to select the desired title from the menu," or "simply press an 'OK' button to choose [a highlighted] selection"—entirely conventional activity. *Id.* at 11:55–62.

In short, representative claim 1 of the '021 patent merely adds the routine and conventional steps of clarifying a spoken request for information by requesting additional information in a non-spoken form to the abstract idea of responding to the spoken request. The steps are recited at a high level of generality, and with no detail that confines the claim to a particular solution. Such conventional steps "add nothing of practical significance to the underlying abstract idea" and are insufficient to supply an inventive concept. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

---

input in a non-spoken modality); and (d) the paralegal then finishes the records request for the circled docket items (*i.e.*, refining the navigation query based on the additional input). Again, that the claimed method maps so directly to a brick and mortar example of the abstract idea highlights that the claims are directed to that idea, rather than to a technological application of it.

### C. The ordered combination of the claimed components does not provide an inventive concept

The functionally claimed limitations of IPA's patents do not add an inventive concept as an ordered combination. The order of the method steps in claim 1 of the '718 patent—"receiving a spoken request for desired information," "rendering an interpretation of the spoken request," "constructing a navigation query based upon the interpretation," and "transmitting the selected portion of the electronic data source"—is natural and conventional. Indeed, it is necessary for processing and responding to a spoken request for desired information. The other claims of the '718, '061, and '021 patents recite similarly conventional sequences.

The specification confirms that the claims recite conventional arrangements of known components. The patents purport to "provide a spoken natural language interface atop an existing, non-voice data navigation system." '718 patent at 10:21–23. The shared specification identifies a number of known prior art systems that implemented such spoken natural language interfaces with the same arrangement of components described in the specification. *See id.* at 13:52–14:4 (describing a "'unified messaging' application," "InfoWiz interactive information kiosk," and "'CommandTalk' application"). One such prior art system is further described in the CommandTalk publication incorporated into the specification. Thus, the patents themselves confirm that they do not describe or claim an unconventional arrangement of components.

The claims' recitation of generic hardware components also does not make the claimed combination of elements unconventional or inventive. At best, it limits the abstract idea to a technological environment. But this cannot provide an inventive concept. *See, e.g.*, *Alice*, 134 S. Ct. at 2358. Indeed, the specification repeatedly explains that a particular architecture or arrangement of components is ***not*** integral the purported invention. For example, the shared specification provides that "practitioners may choose to implement the each of the various

embodiments . . . on any number of different hardware and software computing platforms and environments and various combinations thereof." '718 patent at 6:65–7:1. The specification further stresses that the disclosed "examples are offered to illustrate some of the potential benefits offered by . . . the present invention, and *not to limit the scope of the invention in any respect*." *Id.* at 10:45–48 (emphasis added).

Thus, the claims, as ordered combinations, recite only known and generic components arranged and used in a routine and conventional manner, and thus do not provide an inventive concept. Taken together, the asserted claims recite "desired results (functions)" rather than "particular ways of achieving (performing) them." *Elec. Power Grp.*, 830 F.3d at 1356. The asserted claims do not "patent[] a particular concrete solution to a problem," but rather "attempt[] to patent the abstract idea of a solution to the problem in general." *Id.*

### IV. CONCLUSION

For the reasons discussed in Amazon's motion to dismiss pursuant to Rule 12(b)(6) and the additional reasons discussed herein, the asserted patents are invalid as patent-ineligible under 35 U.S.C. § 101. Sony therefore joins Amazon's motion (C.A. No. 16-1266, D.I. 12–13), and requests that the Court dismiss IPA's asserted claims against Sony with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Michael C. Hendershot
Bruce S. Yen
David T. Okano
Alex H. Lee
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, CA 94304
(650) 320-1800

April 14, 2017
10968134

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

*Attorneys for Defendants Sony Electronics, Inc. and Sony Mobile Communications (USA) Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 14, 2017, upon the following in the manner indicated:

| | |
|---|---|
| Stephen B. Brauerman, Esquire<br>Sara E. Bussiere, Esquire<br>BAYARD, P.A.<br>222 Delaware Avenue, Suite 900<br>P.O. Box 25130<br>Wilmington, DE  19801<br>    *Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Marc A. Fenster, Esquire<br>Brian Ledahl, Esquire<br>Adam Hoffman, Esquire<br>Amir Naini, Esquire<br>RUSS, AUGUST & KABAT<br>12424 Wilshire Boulevard, 12th Floor<br>Los Angeles, CA  90025-1031<br>    *Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Rodger D. Smith II*
Rodger D. Smith II (#3778)